Walter Taieb

2000 Fashion Show Dr. Unit 2022

Las Vegas, NV 89109

702 238 8428

waltertaieb@gmail.com

Plaintiff *Pro Se*

## UNITED STATES DISTRICT COURT

## DISTRICT OF  NEVADA

WALTER J. TAIEB, an Individual

Plaintiff,

v.

UNIVERSAL MUSIC PUBLISHING, INC.
d/b/a UNIVERSAL MUSIC PUBLISHING
GROUP, a corporation.

Defendant.

Case No.: 2:25-cv-02626-JCM-BNW

**PLAINTIFF'S MOTION FOR**

**SANCTIONS PURSUANT TO**

**FEDERAL RULE OF CIVIL**

**PROCEDURE 11**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Walter J. Taieb ("Plaintiff"), proceeding pro se, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 11(c) for an order imposing sanctions against Defendant Universal Music Publishing, Inc. ("UMP") and its counsel, Ballard Spahr LLP, for a pattern of raising frivolous, misleading, and unsupported arguments for the first time in reply briefs and responsive papers—where Plaintiff has no opportunity to respond—throughout this litigation.

Reply briefs serve a narrow and well-defined purpose: to respond to arguments raised in the opposition. They are not vehicles for introducing new theories, new factual assertions, or new legal arguments that the opposing party cannot address. Yet in every single briefing sequence in this case—across four separate filings—UMP has exploited its reply or responsive brief to inject new and often misleading arguments that were absent from its opening papers. This is not an isolated lapse. It is a deliberate litigation strategy designed to deprive Plaintiff of a fair opportunity to be heard and to mislead the Court.

Indeed, UMP's most recent filing—its Reply in Support of Motion to Strike (ECF No. 34)—was so egregious in introducing new substantive arguments that Plaintiff was compelled to file a Motion for Leave to File Surreply (ECF No. 35), which is currently pending before this Court. That filing introduced, among other things, entirely new arguments about the effect of SACEM's determination in the United States, a speculative claim that SACEM communicated with the wrong entity, and a false assertion that Plaintiff "profited from the sale of his music rights." The fact that Plaintiff has been forced to seek leave to file a surreply to address these improperly raised arguments underscores the prejudice caused by UMP's pattern of conduct.

This motion identifies the specific new arguments raised for the first time in each of UMP's four reply and responsive briefs, demonstrates the pattern of abuse, and respectfully requests that the Court take appropriate action to ensure that this practice ceases.

**II. LEGAL STANDARD**

Federal Rule of Civil Procedure 11(b) provides that by presenting a pleading, motion, or other paper to the court, an attorney certifies that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law." Fed. R. Civ. P. 11(b)(2). Rule 11 also requires that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

Courts have recognized that the systematic introduction of new arguments in reply briefs—particularly where those arguments are misleading or lack factual support—constitutes sanctionable conduct. *Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived."); *Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) ("It is inappropriate to consider arguments raised for the first time in a reply brief.").

The purpose of Rule 11 sanctions is to "deter baseless filings" and to "streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Where a party engages in a pattern of filing misleading arguments in a procedurally improper manner, sanctions are appropriate to preserve the integrity of the litigation

process. Moreover, the Court possesses inherent power to sanction conduct that abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991).

### III. FACTUAL BACKGROUND: THE PATTERN

In each of the four briefing sequences in this case, UMP has used its reply or responsive brief to introduce significant new arguments and factual assertions that were entirely absent from its opening motion. The pattern is systematic and unmistakable.

### A. Reply in Support of Motion to Dismiss (ECF No. 18, Filed January 20, 2026)

UMP's original Motion to Dismiss (ECF No. 6) argued two principal grounds: (1) that Plaintiff's claims are time-barred, and (2) that the Complaint fails to state viable claims. Plaintiff filed his Opposition (ECF No. 13) addressing these arguments.

In its Reply (ECF No. 18), UMP introduced the following new arguments that were absent from its Motion:

**1. "Nevada Has Not Recognized the Continuing Violation Doctrine" (Section I.C, Pages 5–6):** UMP devoted an entire section of its Reply to arguing that Nevada does not recognize the continuing violation doctrine—a legal theory that directly targets Plaintiff's argument that UMP's ongoing conduct resets the limitations clock. This was never raised in the original Motion to Dismiss. UMP cited *Kaplan v. County of Washoe*, 464 P.3d 127 (Nev. 2020), *Nickler v. Clark Cty.*, 802 Fed. Appx. 262 (9th Cir. 2020), and *Henry v. Bank of Am.*, 147 A.D.3d 599 (N.Y. 2017)—authorities that Plaintiff had no opportunity to address, distinguish, or rebut.

**2. "Taieb Waived All Other Arguments" (Section II.B, Pages 9–12):** UMP argued for the first time that Plaintiff had "waived" or "consented to" dismissal of each of his individual

claims by allegedly failing to cite sufficient legal authority in his Opposition, invoking LR 7-2(d). This was a new procedural trap that appeared nowhere in UMP's original Motion. Under this theory, UMP then used the reply to launch six separate new claim-specific arguments attacking each cause of action individually:

(a) That Plaintiff's fraud claims fail because no duty or false representation was plausibly alleged (Section II.B.1);

(b) That Plaintiff's conversion claims fail for lack of a specific monetary sum (Section II.B.2);

(c) That the unjust enrichment claim fails because an express contract exists (Section II.B.3);

(d) That rescission and injunctive relief are remedies, not causes of action (Section II.B.4);

(e) That declaratory relief is unwarranted and contingent on pending tort claims (Section II.B.5); and

(f) That breach of fiduciary duty fails because no fiduciary relationship exists (Section II.B.6).

None of these six sub-arguments appeared in UMP's original Motion, which argued the claims should be dismissed broadly on statute of limitations and failure-to-state grounds. The Reply transformed the Motion into a fundamentally different and far more granular attack—one that Plaintiff had no notice of and no opportunity to address.

**3. New Argument That Amendment Would Be Futile (Section III, Page 12):** UMP argued for the first time that Plaintiff's request for leave to amend should be "denied as futile," citing *Utterback v. United States*, 2019 WL 3766383 (C.D. Cal. 2019) and *Defrancesco v. Arizona Bd. of Regents*, 2023 WL 313209 (9th Cir. 2023). The original Motion to Dismiss made no argument regarding futility of amendment.

**B. Reply in Support of Motion to Stay Discovery (ECF No. 25, Filed February 20, 2026)**

UMP's original Motion to Stay Discovery (ECF No. 20) argued that discovery should be stayed pending the Motion to Dismiss based on standard factors: the motion is potentially dispositive, good cause exists, and discovery would be burdensome. Plaintiff filed his Opposition (ECF No. 23) with legal authorities supporting his right to proceed with discovery.

In its Reply (ECF No. 25), UMP introduced the following new arguments:

**1. Attack on Plaintiff's Legal Citations as "Hallucinated" (Page 1):** UMP opened its Reply with an inflammatory accusation that two of Plaintiff's four legal citations were "hallucinated"—meaning fabricated—claiming that quotations Plaintiff attributed to certain cases "do not appear in the case." (ECF No. 25 at 1:22-24.) This accusation was never part of UMP's original Motion to Stay, which made no mention of the quality of Plaintiff's citations. This claim, presented for the first time in a reply, was designed to discredit Plaintiff's Opposition without giving Plaintiff any opportunity to verify, explain, or correct the citations in question.

**2. Prediction That the Motion to Dismiss Will Be Granted (Pages 5–6):** UMP's Reply argued, in a manner absent from its original Motion, that the stay should be granted because the Court would inevitably grant the Motion to Dismiss based on the time-bar defense. UMP

effectively asked the Magistrate Judge to prejudge the Motion to Dismiss—an argument that was not presented in the opening brief and that Plaintiff could not address. This new argument appears to have influenced the Magistrate Judge's decision to grant the stay (ECF No. 28).

**3. Characterization of Plaintiff's Compromise as "Misleading" and "Illusory" (Page 4):** UMP's Reply attacked Plaintiff's good-faith proposal for limited discovery as "misleading in material respects" and "illusory." (ECF No. 25 at 4:16-17.) Rather than simply responding that the proposal was insufficient, UMP launched a new attack characterizing Plaintiff's offer in the most unfavorable terms possible, without Plaintiff being able to clarify or defend the proposal.

**C. Response to Plaintiff's Objection to Discovery Stay Order (ECF No. 30, Filed March 10, 2026)**

After the Magistrate Judge granted UMP's Motion to Stay Discovery (ECF No. 28), Plaintiff filed an Objection to the Order (ECF No. 29). UMP filed its Response (ECF No. 30), which introduced additional new arguments:

**1. Dismissal of SACEM as "A French Nonprofit Co-Op" (Page 5):** For the first time in this litigation, UMP characterized SACEM—the internationally recognized collecting society that administers the copyright for the very work at issue—as merely "a French nonprofit co-op." (ECF No. 30 at 5:11-12.) UMP argued that this "co-op" has no "authority to opine conclusively on copyright ownership rights worldwide absent public hearing or adjudication." This dismissive and misleading characterization of SACEM had never appeared in any of UMP's prior filings. SACEM is the Société des Auteurs, Compositeurs et Éditeurs de Musique, one of the oldest and largest collecting societies in the world, administering the rights of hundreds of thousands of creators. It is the institution through which UMP itself collected royalties on "I Luv U Baby" for

decades. Describing it as a mere "nonprofit co-op" is designed to mislead the Court about the significance of SACEM's determination.

**2. New Argument That Plaintiff's Objection Is a "Red Herring" (Page 5):** UMP argued for the first time that the SACEM developments were a "red herring," dismissing them as "facts entirely absent from the Complaint." This was a new substantive argument about the relevance of SACEM's determination that appeared in no prior filing.

**3. Repetition of "Illusory Compromise" Attack with Additional Detail (Page 4, Footnote 1):** UMP expanded its attack on Plaintiff's compromise proposal with new details and characterizations not previously raised, including the assertion that Plaintiff's proposed compromise was "misleading in material respects" and "required UMP to produce vaguely described, decades-old information, unspecified as to territorial reach."

### D. Reply in Support of Motion to Strike (ECF No. 34, Filed April 8, 2026)

UMP's original Motion to Strike (ECF No. 32) argued on purely procedural grounds that Plaintiff's Notice of Supplemental Authority should be stricken because Plaintiff failed to seek leave of court under LR IB 3-1 and LR 7-2. The Motion made no substantive arguments about the content or relevance of SACEM's determination. Plaintiff filed his Opposition (ECF No. 33) addressing both the procedural issues and the substantive importance of the SACEM evidence.

In its Reply (ECF No. 34), UMP introduced entirely new substantive arguments that had no basis in its original procedural Motion to Strike:

**1. SACEM's Determination "Has No Binding or Conclusive Effect on U.S. Law" (Footnote 1, Page 4):** For the first time, UMP argued that SACEM's official determination—

removing Universal from the copyright registration and ordering a five-year royalty clawback—has "no binding or conclusive effect on U.S. law, let alone the Nevada state law claims of fraud and conversion at issue in this action." This was a substantive legal argument about the effect of foreign copyright determinations on U.S. claims that appeared nowhere in the original Motion to Strike. This argument was particularly significant because it was designed to preempt the Court from even considering SACEM's determination in connection with the pending Motion to Dismiss—and Plaintiff had no opportunity to respond to it within the standard briefing schedule.

**2. SACEM "Likely" Communicated with "One of UMP's Foreign Affiliates"**

**(Footnote 1, Page 4):** UMP speculated for the first time that SACEM's communications were "likely with one of UMP's foreign affiliates, who are not a party to this action." This was a new factual assertion with no evidentiary support—pure speculation designed to distance UMP from SACEM's determination. This assertion is particularly misleading because UMP is the very entity listed on SACEM's registration as the sub-publisher for "I Luv U Baby." UMP collected royalties through the SACEM network for decades. The suggestion that SACEM dealt with some other entity is contradicted by UMP's own conduct and the documentary record. Moreover, UMP's attempt to distance itself from SACEM is fundamentally inconsistent with the fact that Universal Music Publishing in France is not a "foreign affiliate"—it is the same corporate family as the Defendant in this action, operating under the Universal Music Publishing name worldwide.

**3. Plaintiff Must "Litigate in That Foreign Jurisdiction" (Footnote 1, Page 4):** UMP argued for the first time that "if Taieb wants to litigate the conclusive effect of SACEM's alleged 'determination' in France, he needs to do so in that foreign jurisdiction and against the appropriate Universal foreign affiliate." This was a new jurisdictional argument suggesting that

Plaintiff's case belongs in France—never raised in the original Motion to Strike, which was about compliance with Local Rules.

**4. Plaintiff "Chose Not to Pursue Litigation Because He Had Already Profited from the Sale of His Music Rights" (Page 5):** UMP asserted for the first time that Plaintiff "chose not to pursue litigation because he had already profited from the sale of his music rights." (ECF No. 34 at 5:9-11.) This was a new merits argument entirely absent from the original Motion to Strike. Moreover, the assertion is false: Plaintiff has never sold his publishing rights to Universal. That is the central allegation of this case. SACEM's own Legal Department has reviewed the only document Universal could produce to justify its claim—the 1998 Fax—and formally determined that it cannot be characterized as a musical work assignment and publishing contract.

The arguments UMP raised in this Reply were so egregious and so far outside the scope of the original Motion to Strike that Plaintiff was compelled to file a Motion for Leave to File Surreply (ECF No. 35), which is currently pending before this Court. The need for that surreply motion itself demonstrates the prejudice caused by UMP's conduct.

## IV. THE PATTERN IS DELIBERATE AND PREJUDICIAL

The record speaks for itself. In four consecutive briefing sequences, UMP has used every reply or responsive brief to introduce new arguments:

**ECF No. 18 (Reply on Motion to Dismiss):** New arguments on the continuing violation doctrine, waiver/consent under LR 7-2(d), six new claim-specific attacks on individual causes of action, and futility of amendment.

**ECF No. 25 (Reply on Stay of Discovery):** New "hallucinated" citations accusation, prediction that the Motion to Dismiss would be granted, and attack on Plaintiff's compromise proposal as "misleading" and "illusory."

**ECF No. 30 (Response to Objection on Discovery Stay):** New dismissal of SACEM as a mere "French nonprofit co-op," new argument that SACEM developments are a "red herring," and expanded attack on Plaintiff's compromise proposal.

**ECF No. 34 (Reply on Motion to Strike):** New arguments that SACEM has "no effect in U.S. law," speculation about a "foreign affiliate," direction to "litigate in France," and false claim that Plaintiff profited from selling his rights.

This is not a case of a party inadvertently raising a new point in a single reply brief. This is a systematic litigation strategy in which UMP has used every reply and responsive brief to inject new, often misleading, arguments—knowing that Plaintiff has no further opportunity to respond under the standard briefing schedule.

The prejudice to Plaintiff is cumulative and substantial. Each time UMP introduces new arguments in its reply, Plaintiff must choose between letting the arguments go unanswered (risking adverse reliance by the Court) or filing a surreply motion (which requires additional time and resources from a pro se litigant and is not guaranteed to be granted). The Court's docket is burdened with additional motion practice that would be entirely unnecessary if UMP simply included all of its arguments in its opening papers, as the rules require.

The fact that UMP is represented by Ballard Spahr LLP, a sophisticated national law firm, makes this pattern all the more troubling. Counsel is well aware of the prohibition on raising new arguments in reply briefs. The Ninth Circuit has long held that "[i]ssues raised for

the first time in the reply brief are waived." *Bazuaye*, 79 F.3d at 120. Counsel's repeated decision to raise new arguments in reply briefs—despite this clear prohibition—demonstrates a conscious disregard of the rules.

## V. SPECIFIC MISREPRESENTATIONS WARRANT SANCTIONS

Beyond the improper timing, several of UMP's new reply arguments contain assertions that lack evidentiary support or are affirmatively misleading, in violation of Rule 11(b)(3):

**The "Nonprofit Co-Op" Characterization:** UMP's dismissal of SACEM as a "French nonprofit co-op" (ECF No. 30 at 5:11-12) is a deliberate mischaracterization. SACEM is one of the world's oldest and most significant collecting societies for musical works, founded in 1851. It administers the rights of over 190,000 members and distributes over €1 billion in royalties annually. It operates through reciprocal agreements with collecting societies in virtually every country. UMP itself has relied on SACEM and its worldwide network to collect royalties on "I Luv U Baby" for decades. Describing this institution as a mere "nonprofit co-op" is designed to mislead the Court about the significance and authority of SACEM's determination that UMP's claim to this composition was invalid.

**The "Foreign Affiliate" Speculation:** UMP speculated that SACEM's communications were "likely" with a foreign affiliate rather than UMP itself (ECF No. 34 at 4 n.1). UMP offered no evidence for this assertion. In fact, the SACEM registration identifies "Universal Music Publishing" as the sub-publisher—the same entity that is the Defendant in this action. UMP's attempt to create a fictional separation between itself and its French operations is particularly disingenuous given that Universal Music Publishing, Inc. in the United States and Universal Music Publishing in France are part of the same corporate group, operating under the same

name, and the Defendant itself operates "d/b/a Universal Music Publishing Group." This speculative assertion, presented without evidentiary support, violates Rule 11(b)(3).

**The "Profited from the Sale" Claim:** UMP asserted that Plaintiff "profited from the sale of his music rights" (ECF No. 34 at 5:9-11). Plaintiff has never sold his publishing rights to Universal. SACEM's Legal Department has formally determined that the only document UMP could produce—the 1998 Fax—"cannot be characterized as a musical work assignment and publishing contract." This assertion lacks evidentiary support and misrepresents the record.

**The "No Effect in U.S." Claim:** UMP argued that SACEM's determination has no effect in the United States (ECF No. 34 at 4 n.1). This ignores the reality that the global music publishing industry operates through a network of reciprocal agreements between collecting societies. SACEM's removal of UMP from the copyright registration has worldwide effect—including on both performance and mechanical royalty collection in the United States—through the very same network that UMP relied upon for decades to collect royalties. A party cannot rely on a system to collect revenue and then disavow that system when it produces an unfavorable result.

## VI. REQUESTED RELIEF

Pursuant to Rule 11(c) and the Court's inherent authority, Plaintiff respectfully requests that this Court:

(1) Find that Defendant's systematic practice of raising new, often misleading arguments in reply briefs constitutes a violation of Rule 11(b) and an abuse of the litigation process;

(2) Order Defendant to refrain from raising new arguments or factual assertions in any future reply brief filed in this action;

(3) Grant Plaintiff leave to file a surreply as a matter of course whenever Defendant's reply brief introduces arguments not raised in its opening papers;

(4) Instruct the Court to disregard any new arguments raised for the first time in UMP's reply briefs identified herein, including but not limited to: the continuing violation doctrine argument (ECF No. 18 at 5–6), the waiver/consent theory and six new claim-specific arguments (ECF No. 18 at 9–12), the "hallucinated" citations accusation (ECF No. 25 at 1), the characterization of SACEM as a "nonprofit co-op" (ECF No. 30 at 5), and the new substantive arguments in footnote 1 of ECF No. 34;

(5) Impose such additional sanctions as the Court deems appropriate to deter further abuse of the reply brief procedure, including an award of reasonable expenses incurred by Plaintiff in bringing this motion and the pending Motion for Leave to File Surreply.

## VII. RULE 11 SAFE HARBOR COMPLIANCE

Plaintiff certifies that, prior to filing this motion, a copy of this motion was served on Defendant's counsel on April 9, 2026, in accordance with the 21-day safe harbor provision of Rule 11(c)(2). Defendant did not withdraw or correct the challenged filings within the safe harbor period.

## VIII. CONCLUSION

UMP's pattern of raising new, misleading arguments in reply briefs is not an accident. It is a deliberate strategy by a sophisticated law firm designed to deprive a pro se plaintiff of the

opportunity to respond to the very arguments upon which the Court may rely. Across four consecutive filings, UMP has introduced new legal theories, new factual assertions, and affirmatively misleading characterizations—including dismissing the world's largest music collecting society as a mere "nonprofit co-op," inventing a fictional "foreign affiliate" to avoid accountability, and falsely claiming that Plaintiff sold rights he never sold.

The integrity of the adversarial process depends on each party having a fair opportunity to address the arguments raised against it. UMP's systematic abuse of the reply brief undermines that process. Plaintiff respectfully requests that this Court grant this motion and impose appropriate sanctions to ensure that this practice ceases.

DATED: April 30, 2026

/s/ Walter J. Taieb

Plaintiff Pro Se

2000 Fashion Show Drive Unit 2022

Las Vegas, NV 89109

Tel: (702) 238-8428

waltertaieb@gmail.com

## CERTIFICATE OF SERVICE

I certify that on April 30 , 2026, I served the foregoing PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 on Defendant by filing through the CM/ECF system, which will send notification to all counsel of record, including:

Colleen E. McCarty

Ballard Spahr LLP

1980 Festival Plaza Drive, Suite 900

Las Vegas, NV 89135


Robert S. Gutierrez

Ballard Spahr LLP

2029 Century Park East, Suite 1400

Los Angeles, CA 90067

/s/ Walter J. Taieb

Walter J. Taieb, Plaintiff Pro Se