**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

WALTER J. TAIEB,

Plaintiff

v.

UNIVERSAL MUSIC PUBLISHING, INC. d/b/a UNIVERSAL MUSIC PUBLISHING GROUP,

Defendant

Case No.: 2:25-cv-02626-APG-BNW

**Order Granting in Part Defendant's Motion to Dismiss**

[ECF No. 6]

Walter Taieb is a composer who entered into various agreements with a predecessor of defendant Universal Music Publishing, Inc. (UMP). These agreements related to UMP collecting, retaining, and administering royalites generated from four songs (the Works) Taieb created. He believes any agreement between the parties ended in 2000 and UMP has been wrongly collecting royalties that he has been entitled to since then. So he filed this lawsuit asserting claims for (1) fraudulent concealment, (2) fraud in the inducement, (3) conversion – civil theft, (4) conversion – misappropriation of compilation royalties, (5) recission of contract, (6) unjust enrichment, (7) declaratory relief, (8) breach of fiduciary duty, and (9) injunctive relief.

UMP moves to dismiss all claims as time-barred. Additionally, UMP argues that Taieb's claims are not plausible because a later agreement extinguished Taieb's rights in one of his four songs and each claim is deficient for other reasons.[1] Taieb responds that his claims are not time-

[1] In its reply, UMP argues I should not consider any of Taieb's individual arguments opposing dismissal as he only cited authorities for the proposition that his claims are not time-barred. Local Rule 7-2(d) states, "[t]he failure of an opposing party to file points and authorities in response to any motion . . . constitutes a consent to the granting of the motion." Although Taieb

barred because UMP concealed facts and delayed him discovering the alleged torts, that the later agreement that purports to extinguish his rights to one of the Works is fraudulent and invalid, and that each of his claims is plausibly alleged.

I dismiss Taieb's fraud claims because it is apparent on the face of the complaint that the statute of limitations has run. But I grant Taieb leave to amend his fraud claims if he can allege facts that would support application of the discovery rule. I also dismiss Taieb's breach of fiduciary duty claim because it is apparent from the face of the complaint that the statute of limitations has run, and he has not plausibly alleged that a fiduciary relationship existed. But I grant him leave to amend if he can allege facts that would support application of the discovery rule and that a fiduciary relationship existed between the parties. I deny UMP's motion regarding Taieb's conversion and unjust enrichment claims, but Taieb's potential recovery is restricted by their respective statutes of limitation. I dismiss Taieb's recission of contract and injunctive relief claims as standalone claims, but this dismissal is without prejudice to Taieb's ability to seek them as remedies. Finally, I deny UMP's motion regarding Taieb's declaratory relief request because he plausibly alleges that his requests will not necessarily be resolved by his other claims.

## I. Background

Taieb created the Works that are the subject of this case. He alleges that he owns 75% of the Works' copyrights. ECF No. 1-1 at 3. In 1994, he entered into an agreement with UMP (the 1994 Agreement) regarding two of the Works, "I Luv U Baby" and "B. Together," limited to the United Kingdom and Eire with an expiration date in 2000. *Id.* at 7-8. The agreement tasked

---

does not cite authorities beyond the time-bar issue, he responded with arguments against dismissal of his claims.

UMP with collecting and remitting royalties these two songs generated. *Id.* at 8-9. Taieb alleges that UMP collected the income but failed to remit the vast majority, if not all, of the funds. *Id.* at 9. He also alleges UMP did the same collection with no remittance for two other works, "Over and Over" and "On The Top of the World," which were governed by separate administration agreements. *Id.* Taieb alleges UMP never provided him a single royalty statement for any of the Works. *Id.*

"By 1998, the Work 'I Luv U Baby' had achieved massive commercial success globally (UK Charts #2, 25 million units sold)." *Id.* at 12. That same year, Taieb agreed to sell UMP his share of the copyright to "I Luv U Baby" (the 1998 Agreement). *Id.* Taieb signed this deal, but he alleges that UMP intentionally concealed the funds generated by the song to induce him to do so. *Id.* He claims the 1998 Agreement is invalid "due to chaotic pricing, unauthorized execution by attorney Stephen Luckman (no Power of Attorney), and the illegal demand to transfer" rights that were inalienable because of his membership in collection society SACEM. *Id.* at 10, 16. Particularly, he alleges that his writer's share is "inalienable and assigned to SACEM to administer on his behalf" and that he does not '"hold' that share in a way that can be sold to a publisher." *Id.* at 16. Further, he would need to resign from SACEM before it is legally possible for him to transfer his writer's share, "which he never did." *Id.* at 17.

In 2000, UMP prepared an internal accounting statement summarizing the income generated by "I Luv U Baby" and "B. Together" (2000 Accounting Statement) while settling a dispute with "I Luv U Baby's" singer. *Id.* at 13-15. The accounting was originally faxed to the singer's counsel, and it reflected that UMP had collected over $500,000 from these songs. *Id.* at 12-14. Taieb alleges UMP never gave him any royalty statements, reconciliations, or breakdowns relating these figures to what they remitted to him. *Id.* at 15. He later found this

document in his files, but he alleges he did not understand its significance regarding UMP misappropriating his share of the royalties until 2025. *Id.*

In 2011, Taieb asked Broadcast Music, Inc. (BMI), the primary United States performing rights organization, why it was keeping royalties for "I Luv U Baby" on hold. *Id.* at 23. This inquiry prompted BMI to conduct an internal investigation which resulted in it releasing the held royalties to Taieb, correcting its internal registration to reflect his 75% copyrights shares, and removing UMP's publishing claim to the song in its system. *Id.* at 23-24.

In 2025, UMP contacted Taieb regarding a clearance inquiry for "I Luv U Baby." *Id.* at 25. Upon his request, UMP sent him copies of the 1994 and 1998 Agreements. *Id.* Taieb alleges that comparing UMP's contractual obligations within the 1994 Agreement and the absence of any accounting or payments made him realize that UMP had been continuously collecting and retaining royalties he was and is entitled to. *Id.* at 27. He thus filed this lawsuit in state court on December 5, 2025, and UMP removed the case to this court. ECF Nos. 1; 1-1 at 2.

## II. Analysis

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe them in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). I do not, however, "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017). I need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). Nor am I "required to accept as true allegations that are merely conclusory,

unwarranted deductions of fact, or unreasonable inferences." *Id.* Importantly, a plaintiff can "plead himself out of a claim by including unnecessary details contrary to his claims." *Id.*

To defeat a motion to dismiss, a plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* Instead, the complaint must include "a short and plain statement of the claim" that shows the plaintiff "is entitled to relief" and gives the defendants "fair notice of what the claim is and the grounds upon which it rests." *Id.* (simplified). A statute of limitations defense may be raised by a motion to dismiss "if the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). "When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Id.*

"Courts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints." *Bernhardt v. Los Angeles County,* 339 F.3d 920, 925 (9th Cir. 2003). Still, pro se litigants are bound by the rules of procedure. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

**A. I grant Taieb leave to amend to add facts and clarify claims related to the songs "Over and Over" and "On The Top of the World."**

Taieb alleges that the songs "Over and Over" and "On The Top of the World" were part of a "systematic scheme of fraud, concealment, and civil theft committed by [UMP]" along with "I Luv U Baby" and "B. Together." ECF No. 1-1 at 3. He states they were governed by separate administration agreements but does not allege facts about those agreements or what claims are

relevant to these other two songs. *Id.* at 9. Thus, Taieb has not plausibly alleged claims related to those two songs, so I grant UMP's motion regarding them. I also grant Taieb leave to amend to add facts and clarify which claims are relevant to "Over and Over" and "On The Top of The World."

**B. Taieb has plausibly alleged the 1998 Agreement is invalid.**

UMP asserts that all Taieb's claims related to "I Luv U Baby" fail because he sold his copyright interest in that song through the 1998 Agreement. To support that assertion, UMP attaches to its motion a settlement agreement that resolved the dispute with "I Luv U Baby's" singer. UMP contends that a provision in the settlement agreement acknowledges Taieb transferred all his copyright interest in "I Luv U Baby" to UMP. Taieb responds that UMP cannot rely on the settlement agreement because it was not attached to the complaint. He also argues that the 1998 Agreement does not extinguish these claims because UMP concealed accounting information yet offered a comparatively small lump sum to buy his rights in perpetuity. He further contends that the 1998 Agreement included release-type language, but it did not absolve UMP's prior breaches of its obligation to account and remit under the 1994 Agreement. He notes that UMP did not object when BMI corrected the song's registration nor when SACEM did not recognize the 1998 Agreement. And he asserts that UMP acted inconsistently with its claim of ownership as it has repeatedly asked him for authorization to use the song. Additionally, he claims the 1998 Agreement's language is inconsistent with it being a complete and unconditional extinguishment of his rights. Lastly, Taieb argues SACEM's governing framework renders the 1998 Agreement void. UMP replies that Taieb attached the 1998 Agreement to his complaint and thus cannot now ask me to disregard it. It also argues I should consider the settlement agreement because it is referenced in the complaint and neither

party questions its authenticity. But it contends I should not consider the SACEM statutes Taieb attached to his opposition because they are not exhibits to or referenced in the complaint and are not a basis for any of his claims. UMP further asserts that the 1998 Agreement was a full and final agreement between them, Taieb received legal advice in relation to it, and he signed and warranted that he was fully entitled to enter into the 1998 Agreement.

*1. Taieb plausibly alleges the 1998 Agreement is invalid because his writer's share is inalienable as a member of SACEM.*

UMP argues the 1998 Agreement is valid because Taieb signed it and its plain language shows that he transferred all his rights to "I Luv U Baby." Taieb responds that he was unable to transfer these rights because doing so would violate SACEM's governing framework. Additionally, he argues that SACEM not accepting or registering the 1998 Agreement shows its invalidity. UMP contends that Taieb warranted that he was entitled to transfer his copyright to UMP and agreed to indemnify UMP against any claims or damages resulting from a breach of that warranty. Additionally, it asserts the 1998 Agreement provided for damages in favor of UMP in the event of any misrepresentation in that regard.

In his complaint, Taieb alleges "[a]s a member of SACEM, [his] Writer's Share is, by statute and society rules, inalienable and assigned to SACEM to administer on his behalf," and he would have needed to resign from SACEM prior to assigning his share. ECF No. 1-1 at 16-17.[2] He alleges that Clause 3(c) of the 1998 Agreement transfers his writer's share to UMP in perpetuity. Clause 3(c) is difficult to read as much of it is scratched out, and there is another

[2] I need not analyze the attached SACEM statutes because the complaint sufficiently alleges what they say, and I do not analyze them because I decline to convert this motion to dismiss into one for summary judgment. *See United States v. Walker River Irrigation Dist.*, 473 F. Supp. 3d 1150, 1154 (D. Nev. 2020).

layer of confusion as there is a "stet" notation beside the scratched-out text.[3] *See id.* at 52. Still, it is possible to make out the words "the delivery to us of your written instructions to SACEM . . . to pay us with immediate effect your writer's share . . . in perpetuity and [its] acknowledgment thereof." *Id.* Taking Taieb's allegations as true when resolving this motion to dismiss and accepting as true that SACEM's statutes precluded him from transferring his writer's share, Taieb has plausibly alleged that the 1998 Agreement is invalid. *See United Music Co. v. Universal Pictures Corp.*, 1937 WL 25965, at *2 (S.D.N.Y. Sept. 11, 1937) (finding that a plaintiff's copyrights could not include certain rights "because those rights were at the time the property of [SACEM] under its statutes and regulations and under the terms of the composers' membership therein and also by the provisions of the registration itself").

UMP asserts that Taieb signed the 1998 Agreement and warranted his ability to enter into it. But that does not show that the 1998 Agreement is valid such that dismissal is appropriate. A person lacking legal ownership of something and warranting their ability to transfer it does not change that they lack ownership. Thus, it is plausible that Taieb's membership with SACEM could negate his ability to transfer certain rights.

Construing all well-pleaded allegations of material fact as true and construing them in a light most favorable to Taieb, he has plausibly alleged the 1998 Agreement is invalid. Thus, I do not dismiss any of his claims on the basis that the 1998 Agreement extinguished Taieb's rights in "I Luv U Baby." Moreover, a finding that the 1998 Agreement is valid would support dismissal only as to that song. Taieb asserts UMP has failed to pay him royalties related to other songs.

---

[3] It is unclear if the "stet" notation means that the scratched-out language was meant to stay in the contract or whether the stet referred to the scratch-out.

*2. Taieb's other arguments do not plausibly allege the 1998 Agreement is invalid.*

In his opposition, Taieb argues that UMP withheld accounting information and remittances in violation of the 1994 Agreement. He asserts UMP fraudulently concealed how much "I Luv U Baby" was earning and thereby fraudulently induced him into signing the 1998 Agreement to sell the song for less than what UMP already owed him in royalties. He also contends that the 1998 Agreement cannot absolve UMP of its breaches of the 1994 Agreement. As discussed more thoroughly later, Taieb's fraud-based allegations and claims are time-barred and thus cannot plausibly support an allegation that the 1998 Agreement is invalid. *See* Nevada Revised Statutes (NRS) § 11.190(3)(d). Additionally, alleging that UMP breached the 1994 Agreement does not plausibly allege that the 1998 Agreement is invalid.

Taieb also argues that UMP's failure to object to BMI's registration correction in 2012 and its requests for him to authorize use of "I Luv U Baby" are inconsistent with UMP's position that the 1998 Agreement was a total transfer of his rights regarding the song. But allegations that UMP did not always adhere to the agreement does not plausibly allege the agreement is invalid.

Taieb next argues that the 1998 Agreement's language regarding "B. Together" is inconsistent with UMP's position that the agreement is a complete and unconditional extinguishment of his interests. The language he refers to concerns only his rights regarding the song "B. Together." This is irrelevant to "I Luv U Baby" and thus does not plausibly allege the 1998 Agreement is invalid.

*3. I do not consider the settlement agreement UMP attached to its motion.*

UMP asks me to consider a document not attached to the complaint when considering its motion to dismiss. UMP attached to its motion a settlement agreement with the singer of "I Luv

U Baby," and it wants me to consider that settlement agreement for the proposition that Taieb acknowledged the 1998 Agreement was valid. UMP cites *Knievel v. ESPN* and *Shwarz v. United States* for the proposition that "[a] court may . . . consider . . . documents that are referred to in the complaint whose authenticity no party questions." ECF No. 6 at 7-8.

Generally, "when ruling on a motion to dismiss, [I] must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). But under the incorporation by reference doctrine, I may consider documents if the "plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Id.*

I decline to consider the settlement agreement because Taieb's claims do not depend on it. The complaint references the settlement. ECF No. 1-1 at 13-14, 23. But his references provide context about how he received the 2000 Accounting Statement. *See id.* at 14 ("In the course of that singer dispute, UMP prepared an internal accounting statement and transmitted it to the singer's representatives."). His claims do not depend on the settlement agreement. Thus, I do not consider the settlement agreement in ruling on UMP's motion.

**C. Taieb has failed to plausibly allege that the continuing-tort doctrine applies.**

UMP moves to dismiss all of Taieb's claims as time-barred. UMP asserts Taieb may not toll the limitation period by relying on the continuing-tort doctrine because he knew facts which, with proper diligence, would have enabled him to learn of the facts supporting his claims a long time ago. Taieb responds that each new collection and retention of royalties constitutes an ongoing wrongful act and continuing injury, which independently supports tolling. UMP replies

that none of the applicable statutes of limitation contain language excepting claims of a continuing nature and that the Supreme Court of Nevada has declined to add such an interpretation.

Under the continuing-tort doctrine, "[w]hen a tort involves continuing wrongful conduct, the statute of limitations does[ not] begin to run until that conduct ends." *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002). "The doctrine applies where there is no single incident that can fairly or realistically be identified as the cause of significant harm." *Id.* (quotation omitted).

Taieb alleges that "each intercepted royalty payment and each failure to remit [his] share after approximately June 30, 2000 constitutes a new and independent injury, so all claims are timely at least as to the continuing theft and non-payment within the three years preceding the filing of this action." ECF No. 1-1 at 28. Therefore, each alleged wrongful collection and retainment is one in a series of discrete takings, not a continuing tort where no single incident can realistically be identified as the cause of harm. *See Kraja v. Bellagio, LLC*, 202 F. Supp. 3d 1163, 1174 (D. Nev. 2016). ("The [continuing-tort] doctrine is inapplicable to [plaintiff's] claim because he alleges a series of discrete acts that can fairly be identified as the cause of his harm."). Accordingly, Taieb has failed to allege that the continuing-tort doctrine applies to toll the limitation periods for his claims.

**D. Taieb has failed to plausibly allege the discovery rule applies.**

UMP asserts that the discovery rule should not toll any limitation periods because Taieb knew or should have known of the alleged wrongdoing as early as 2000, when it sent him an accounting of the income generated by two of the Works, or as late as 2012, when BMI alerted him of his purported revenue entitlement. Taieb responds that the accounting was limited and

did not provide clarity to the downstream reality of the royalties UMP collected and that BMI's allocation process did not reveal facts relevant to UMP's alleged misconduct.

A statute of limitations defense may be raised by a motion to dismiss "if the running of the statute is apparent on the face of the complaint." *Jablon*, 614 F.2d at 682 (9th Cir. 1980). "When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Id.* "The general rule concerning statutes of limitation is that a cause of action accrues when the wrong occurs and a party sustains injuries for which relief could be sought." *Petersen v. Bruen*, 792 P.3d 18, 20 (Nev. 1990). The Supreme Court of Nevada has recognized the "discovery rule" as an exception. *Id.* "Under the discovery rule, the statutory period of limitations is tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action." *Id.* "In a discovery based cause of action, a plaintiff must use due diligence in determining the existence of a cause of action." *Bemis v. Est. of Bemis.*, 967 P.2d 437, 440 (Nev. 1998). Similarly, "a plaintiff discovers his injury when he knows or, through the use of reasonable diligence, should have known of facts that would put a reasonable person on inquiry notice of his cause of action." *Winn v. Sunrise Hosp. & Med. Ctr.*, 277 P.3d 458, 462 (Nev. 2012) (en banc) (simplified). "[A] person is put on inquiry notice when he or she should have known of facts that would lead an ordinarily prudent person to investigate the matter further." *Id.* (quotation omitted). "Whether plaintiffs exercised reasonable diligence in discovering their causes of action is a question of fact to be determined by the jury or trial court after a full hearing." *Bemis*, 967 P.2d at 440. (quotation omitted). "Dismissal on statute of limitations grounds is only appropriate when uncontroverted evidence

irrefutably demonstrates plaintiff discovered or should have discovered the facts giving rise to the cause of action." *Id.* (quotation omitted).

It is apparent from the face of the complaint that Taieb was on inquiry notice no later than 2012, so the discovery rule does not toll the limitation periods. Taieb alleges that by 1998, "the Work 'I Luv U Baby' had achieved massive commercial success globally" by reaching number two on the United Kingdom charts and selling 25 million units. ECF No. 1-1 at 12. Likewise, he states that each of the other Works also achieved "a level of commercial success." *Id.* at 9. Yet he alleges that UMP[4] never provided "a single royalty statement to [him]" for any of the Works "in over 30 years." *Id.* The 1994 contract required twice yearly statements and payments to be provided to Taieb, and Taieb was entitled to request a review of UMP's predecessor's records once per year. *Id.* at 48-49. Additionally, the 1994 Agreement was limited to the United Kingdom and Eire, yet UMP collected royalties generated across the world. *Id.* at 8. Thus, by 1998, Taieb knew or should have known that his Works were generating substantial revenue, the contract required UMP to provide him with royalty statements and payments twice a year, that UMP had not done so even once, and that he could have requested a review of UMP's books.

Further, Taieb attaches to his complaint the 2000 Accounting Statement to show that UMP had collected the equivalent of over $500,000 for income generated by "I Luv U Baby" and "B. Together." *Id.* at 13. He located this document within his own files. *Id.* at 15. Yet he claims that "no professional composer whose livelihood depends on royalties [] would knowingly allow a publisher to keep the equivalent of half a million dollars of his money without protest" and that it is "far more reasonable" that he did not understand that UMP had already

---

[4] I refer to UMP and its predecessor as UMP.

misappropriated his share "given the lack of royalty statements, the complexity of cross-border royalty flows, and [his] reliance on SACEM's administration." *Id.* But the discovery rule is not based on whether a plaintiff subjectively understood he had a claim. The 2000 Accounting Statement showing substantial revenue collected for "I Luv U Baby" and "B. Together" would have put a reasonable person on inquiry notice where that person asserts he had not received a single royalty statement or payment.

Specifically for "I Luv U Baby," there is even more reason Taieb should have known that UMP was not paying him royalties. He alleges that he asked BMI why certain royalties were on hold regarding "I Luv U Baby." *Id.* at 11. This prompted BMI to launch a "comprehensive forensic investigation into the ownership of the Works after internal questions arose regarding royalties being held." *Id.* According to the complaint, BMI concluded that Taieb was entitled to his 75% share of the royalties and began to pay him directly in accordance with the corrected registration for U.S. performance purposes. *Id.* at 11, 20-21, 23-24. He claims this investigation does not mean he should have discovered UMP's alleged misconduct because BMI's investigation did not provide him with information regarding UMP's "internal licensing/collection history, the source-by-source accounting, the royalty flows through sub-publishers and reciprocal societies, and what [UMP] retained versus paid out." ECF No. 13 at 13. The fact that BMI concluded he owned a 75% share and BMI began direct payments would have put a reasonable person on inquiry notice about how his royalties had been collected and distributed before then.

It is apparent from the face of the complaint that Taieb irrefutably knew or should have known that UMP was not paying him royalties by 2012 at the latest. Even accepting the difficulty of tracking the revenue streams and the lack of information regarding UMP's internal

collections and remittances, Taieb alleges that he did not receive any royalty payments or statements despite (1) the contract requiring twice yearly royalty statements and payments, (2) "I Luv U Baby" and "B. Together's" commercial success, and (3) documents showing that UMP had collected royalties. From the face of the complaint, Taieb was on inquiry notice by 2012, and he fails to plausibly allege that he exercised due diligence in discovering his claims against UMP. The fact that he personally did not understand the factual or legal significance of documents in his possession does not support application of the discovery rule. *See Massey v. Litton*, 669 P.2d 248, 252 (Nev. 1983) (Regarding the discovery rule, "[t]he focus is on the [plaintiff's] knowledge of or access to facts rather than on her discovery of legal theories."). Additionally, accepting his contention that UMP intentionally concealed information does not turn this issue in his favor because he has not plausibly alleged facts that he was diligent. *See Siragusa v. Brown*, 971 P.2d 801, 807 (Nev. 1998) ("[E]ven if there were issues of intentional concealment, such wrongful conduct would not excuse [the plaintiff's] failure to exercise due diligence.").

Thus, the discovery rule does not toll the limitation period for Taieb's claims related to "I Luv U Baby" or "B. Together." Instead, each of Taieb's claims will be held to the applicable limitation period. Because Taieb is proceeding pro se and it is not clear that amendment would futile, I grant him leave to amend to the extent he can allege facts that would support application of the discovery rule, particularly how he exercised due diligence in attempting to discover the lack of royalty payments.

**E. Taieb's fraud claims are time-barred.**

UMP moves to dismiss Taieb's first and second claims for fraudulent concealment and fraud in the inducement as time-barred because the alleged fraud occurred outside the limitation

period. UMP also argues these claims fail because it owed no fiduciary duty to Taieb to disclose material facts relating to its receipt and management of royalties from the Works. Additionally, it argues that Taieb's second claim is duplicative of the first and fails to allege a false representation, which is an element of the claim. Taieb responds that he has plausibly alleged delayed discovery, concealment, and facts showing he could not reasonably have discovered the wrongdoing earlier. He also argues that his claims are not duplicative as UMP possessed superior accounting information and presented the 1998 Agreement without disclosing material facts and without providing contractual accountings required under the 1994 Agreement.

Fraudulent concealment and fraud in the inducement claims must be brought within three years from discovery. NRS § 11.190(3)(d). Taieb's fraudulent concealment claim alleges UMP had a duty to disclose its accounting statements but failed to do so by the time of the negotiations for the 1998 Agreement. Pleading in the alternative, he alleges that if the 1998 Agreement is valid, he was fraudulently induced to enter into it. Both claims are based on conduct related to the making of the 1998 Agreement. Thus, these claims rely on alleged wrongful conduct that occurred outside the three-year limitation period. I have already explained that Taieb has not plausibly alleged that the continuing-tort doctrine or discovery rule toll the relevant limitation period. Accordingly, I dismiss Taieb's first and second claims as time-barred.

**F. Taieb has plausibly alleged timely conversion claims.**

UMP moves to dismiss Taieb's third and fourth claims (conversion – civil theft and conversion – misappropriation of compilation royalties) because conversion cannot be based on intangible property rights and generalized sums of money. Taieb responds that the ongoing retention of royalty payments traceable to the Works are sufficiently specific and identifiable

funds. UMP replies that Taieb's failure to identify a sum certain is fatal to his conversion claims.

Conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *Wantz v. Redfield*, 326 P.2d 413, 414 (Nev. 1958). "[T]angible and intangible property alike can be converted." *Blige v. Terry*, 540 P.3d 421, 431 (Nev. 2023) (en banc). Under Nevada law, specifically identifiable money can be the subject of a conversion claim. *See Bemis*, 967 P.2d at 439-441 ($25,000 that was supposed to be placed in trust); *Larson v. B.R. Enters., Inc.*, 757 P.2d 354, 355-56 (Nev. 1988) (a $15,375 payment); *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1171 (9th Cir. 2012) ("In Nevada, a defendant's wrongful dominion over a plaintiff's commission of money is sufficient for a conversion claim, even when no personal property is involved."). The limitation period for a conversion claim is three years from discovery. *Bemis*, 967 P.2d at 440 (citing NRS § 11.190(3)(c)).

Taieb alleges that he is entitled to the royalties and direct-license income generated from the Works and licenses that UMP wrongfully collects and retains. For the royalties, he alleges the relevant funds are maintained "in specific royalty and suspense accounts identified by work code and participant share." ECF No. 1-1 at 30. For the compilation and direct-license revenues, he alleges those are maintained "in specific, identifiable accounts . . . [that] can be traced to particular albums, licenses, statements, and accounting entries." *Id.* at 33. Although he does not allege a specific dollar amount, he specifically identifies the funds. *See Hester v. Vision Airlines, Inc.*, No. 2:09-cv-0117-RLH-RJJ, 2011 WL 856871, at *3 (D. Nev. Mar. 9, 2011) ("Where . . . [defendant] received money specifically earmarked to be given to its [workers], but kept it for its own benefit, it has converted the property (money), to which it has little or no right."); *Dunham*

*Tr. Co. as Tr. of Darrell N. Garmann Testamentary Tr. 2012 v. Wells Fargo Bank, N.A.*, No. 3:18-cv-00181-LRH-WGC, 2019 WL 489095, at *6 (D. Nev. Feb. 7, 2019) ("Although money cannot typically be the subject of a conversion claim, it can be where the money is identifiable, such as being set aside in a separate account or separately earmarked."). Taieb thus has plausibly identified specific funds that are subject to being converted. Given the three-year limitation period, Taieb's claims are time-barred only as to the alleged collections made more than three years before he filed the complaint. Thus, I do not dismiss Taieb's third or fourth claims, but his recovery is limited to funds converted within the limitation period.

**G. Recission and injunctive relief are remedies, not standalone claims.**

UMP moves to dismiss Taieb's fifth and ninth claims because recission and injunctive relief are remedies, not independent claims. In response, Taieb does not dispute that argument but requests that I construe them as forms of relief. Given his lack of opposition, I dismiss Taieb's recission and injunctive relief claims as standalone claims, but Taieb may pursue both as remedies. *See* LR 7-2(d).

**H. Taieb has plausibly alleged his unjust enrichment claim.**

UMP moves to dismiss Taieb's sixth claim because he cannot assert an unjust enrichment claim when there are express, written contracts between the parties. Taieb responds that his claim is proper as he disputes the validity, enforceability, and scope of the 1998 Agreement. He also argues he may plead in the alternative because he contests UMP's contract-based defense. UMP replies that his claim still fails because it relies on the express, written 1994 Agreement and he does not dispute that agreement's validity or scope.

Unjust enrichment occurs when (1) a plaintiff confers a benefit on a defendant, (2) the defendant appreciates that benefit, and (3) the defendant accepts and retains the benefit "under

such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Nautilus Ins. Co. v. Access Med., LLC*, 482 P.3d 683, 688 (Nev. 2021) (en banc) (quotation omitted). "The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]." *Leasepartners Corp. v. Robert L. Brooks Tr.*, 942 P.2d 182, 187 (Nev. 1997) (quotation omitted). "An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Id.* "The statute of limitation for an unjust enrichment claim is four years." *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011) (en banc) (citing NRS § 11.190(2)(c)).

Taieb alleges UMP retained the benefit of his royalties for decades without paying for them, and he relies on the 1994 Agreement for the premise that UMP had no right to collect his royalties after 2000. But he is not seeking recovery under the 1994 Agreement; he is instead pointing to the absence of a written agreement due to the conclusion of the 1994 Agreement. In the absence of any agreement altering his rights, he alleges that he is entitled to the royalties that UMP has continuously collected after the contract expired. Taieb has plausibly alleged the elements of an unjust enrichment claim. He alleges that he conferred a benefit on UMP by generating royalties via the Works, UMP appreciated that benefit by retaining the royalties, and it would be inequitable for UMP to retain this benefit without compensating Taieb. Given the four-year statute of limitations, Taieb's claims are time-barred only as to the alleged collections made more than four years before he filed the complaint. Thus, I do not dismiss Taieb's sixth claim, but his recovery is limited to funds unjustly retained within the limitation period.

**I. Taieb may maintain his claim for declaratory relief.**

UMP moves to dismiss Taieb's seventh claim because declaratory relief is unnecessary and unripe as his rights and entitlements are contingent upon litigating his tort claims. Taieb responds that declaratory relief under Nevada law is proper as it would resolve the controversy and prevent ongoing harm regarding ownership, royalty entitlements, and UMP's continued exploitation and collection.

"Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed." NRS § 30.030. For declaratory relief to be available, "(1) there must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectible interest; and (4) the issue involved in the controversy must be ripe for judicial determination." *Knittle v. Progressive Cas. Ins. Co.*, 908 P.2d 724, 725 (Nev. 1996) (quotation omitted). "[A] declaratory judgment in essence does not carry with it the element of coercion as to either party. Rather, it determines their legal rights without undertaking to compel either party to pay money or to take some other action to satisfy such rights as are determined to exist by the declaratory judgment." *Aronoff v. Katleman*, 345 P.2d 221, 225 (Nev. 1959).

Taieb seeks a judicial declaration regarding the validity and effect of the 1994 and 1998 Agreements, each party's respective ownership in the Works, and UMP's continuing right to collect and administer Taieb's share of royalties. UMP cites *Knittle* for the proposition that "where the declaration of rights sought are those contingent upon successful litigation of the pending tort claims, there is no legally protectable interest creating a justiciable controversy ripe

for declaratory relief." ECF No. 6 at 16. Part of Taieb's requests are contingent on his underlying tort claims, but resolution of the existing claims may not result in resolution of all of Taieb's rights going forward, particularly regarding each party's ongoing rights in the Works and royalties generated by them. This distinguishes the present case from one such as *Knittle* where the plaintiff's right to pursue declaratory judgment against a defendant's insurance company was wholly contingent on her whether she succeeded in her litigation against the defendant. Thus, I deny this part of UMP's motion. Taieb's declaratory relief claim may proceed to the extent it seeks declarations on forward-looking issues not resolved by his other claims.

**J. Taieb has failed to plausibly allege his breach of fiduciary duty claim is timely, and he fails to allege a fiduciary relationship.**

UMP moves to dismiss Taieb's fifth claim because the alleged breach of fiduciary duty is time-barred and no fiduciary relationship existed. Taieb responds that a fiduciary relationship existed because UMP was contractually obligated to collect royalty income and account for and remit it, and UMP controlled the relevant information to perform those tasks. UMP replies that there were no special circumstances that would create a fiduciary duty.

"[A] fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Matter of Frei Irrevocable Tr. Dated Oct. 29, 1996*, 390 P.3d 646, 653 (Nev. 2017) (en banc) (quotation omitted). A fiduciary relationship also exists "when one places heightened confidence in another such that the latter must then act in good faith and for the other's benefit," such as a physician-patient relationship, a partnership or agency relationship, attorney-client relationship, or a marriage. *Valley Health Sys., LLC v. Murray*, 544 P.3d 904, 908, 909 n.5 (Nev. 2024) (en banc). "A claim for breach of fiduciary duty seeks damages for injuries that result

from the tortious conduct of one who owes a duty to another by virtue of the fiduciary relationship." *Matter of Frei*, 390 P.3d at 653 (simplified). "A breach of fiduciary duty is analogous to fraud, and thus, Nevada applies the three-year statute of limitation set forth in NRS 11.190(3)(d)."[5] *In re Amerco Derivative Litigation*, 252 P.3d at 703. The claim accrues when the breach is discovered or should have been discovered. *Id.*

Taieb alleges this claim is independent of any contract but relies on the 1994 Agreement as the basis for his and UMP's fiduciary relationship. The relationship created by the 1994 Agreement is contractual rather than one where UMP is under a duty to give Taieb advice or act for his benefit. *See Matter of Frei*, 390 P.3d at 653. Even assuming that the 1994 Agreement created a fiduciary relationship between the parties, that relationship would have ended upon the agreement's conclusion in 2000, which is well outside the three-year limitation period. And as discussed above, Taieb has not plausibly alleged a basis to toll the limitation period. Accordingly, I dismiss Taieb's eighth claim.

**K. Taieb must comply with Federal Rule of Civil Procedure 11 going forward.**

Taieb's filings contain citations and quotations that do not exist. For instance, he cites *Carter v. Goodman Group Music Publishers* and *Mellencamp v. Riva Music Ltd.* for the proposition that "[c]ourts have recognized that music publishers and sub-publishers who undertake to collect and remit royalties for authors may thereby assume fiduciary-type

---

[5] UMP cites to NRS § 11.190(4)(g) for the proposition that Taieb's breach of fiduciary duty claim is subject to a two-year limitation period. ECF No. 6 at 8. But UMP does not explain why that applies in this case. Section 11.190(4)(g) provides that "absent fraud or intentional misrepresentation, an action to recover for breach of fiduciary duty against a fiduciary, as defined in NRS 163.554, who resides in this State or a trust company as described in chapter 669 or 669A of NRS that has its principal place of business in this State" is two years. But UMP does not reside in Nevada and is not a trust company with its principal place of business here. *See* ECF No. 1 at 2. Additionally, Taieb alleges fraud as part of this claim, which makes this statute inapplicable. *Id.*

obligations of loyalty, good faith, and full disclosure in connection with that role, including duties to account accurately and not to secretly retain the author's share." ECF No. 1-1 at 37. *Carter* says the opposite: "In the absence of special circumstances, no fiduciary relationship exists between a music publisher and composers as a matter of law." 848 F. Supp. 438, 445 (S.D.N.Y. 1994) (citing *Mellencamp v. Riva Music Ltd.*, 698 F. Supp. 1154, 1159–60 (S.D.N.Y. 1988)). Additionally, his cite to *Mellencamp* at 744 F. Supp. 491 is fictious because that citation refers to a different case that begins on a different page of the Federal Supplement. He cites *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280 (Nev. 2006) for the proposition that "[w]hile money is generally not subject to conversion, it becomes so when it is a 'specific, identifiable sum' or a segregated fund." ECF No. 1-1 at 31. That case not only does not support that proposition, it does not use any of the three words he quotes. Rather, the case involved the alleged conversion of paper and ink from a single-page fax. *Edwards*, 130 P.3d at 1287. It appears Taieb is using artificial intelligence aids to prepare his filings.

When a pro se litigant or attorney signs any filing before this court, they certify that "the claims, defenses, and other legal contentions are warranted by existing law." Fed. R. Civ. P. 11(b)(2). To the extent Taieb has relied on artificial intelligence to write his papers, I caution him that artificial intelligence is known to fabricate cases, quotations, holdings, and reasoning. Regardless of whether the incorrect citations were the result of artificial intelligence use, it is Taieb's responsibility to review his filings and citations to ensure they are accurate and say what he claims they do. The failure to do so may expose him to sanctions under Rule 11, including case dismissal.

/ / / /

/ / / /

**L. I grant Taieb leave to amend.**

As discussed above, I grant Taieb leave to file an amended complaint if facts exist to plausibly cure the defects pointed out in this order. The amended complaint must be a complete document in and of itself and will supersede the original complaint in its entirety. Any allegations, parties, or requests for relief from prior papers that are not carried forward in the amended complaint will no longer be before the court. Taieb is advised to support each claim with factual allegations because all complaints "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Where multiple claims are alleged, the complaint should identify which factual allegations give rise to each particular claim. Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim." Thus, the amended complaint should not include lengthy repetitions of statutes, rules, and filings in other cases.

## III. Conclusion

I THEREFORE ORDER that defendant Universal Music Publishing, Inc.'s motion to dismiss (**ECF No. 6**) **is GRANTED IN PART**. Taieb's fraud claims and breach of fiduciary duty claim are dismissed without prejudice. Taieb's recission of contract and injunctive claims are dismissed as standalone claims but not as forms of relief. UMP's motion is denied in all other respects.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

I FURTHER ORDER that Taieb may file an amended complaint curing the deficiencies noted in this order, but not asserting any new claims, by November 24, 2026. If Taieb does not file an amended complaint by that date, the case will proceed on his conversion, unjust enrichment, and declaratory relief claims only.

DATED this 2nd day of November, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE